IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VICKIE JEAN ALDRICH,

          Plaintiff,

vs.                         Case No. 12-1325-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

          Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

April 26, 2010, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 15-25). Plaintiff alleges that she has been disabled since November 2, 2007 (R. at 15). Plaintiff is insured for disability insurance benefits through

September 30, 2009 (R. at 17). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date of disability (R. at 17). At step two, the ALJ found that plaintiff has the following severe impairments: hepatitis C, degenerative disc disease of the lumbar spine, history of osteoporosis, major depressive disorder, post-traumatic stress disorder, and polysubstance abuse in alleged remission (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18). After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 23). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 24-25). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must

5

always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.

6

Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

In his decision, the ALJ discussed a functional capacity evaluation performed by Brenda Hendrick, a licensed physical therapist (LPT) on August 26, 2009 (R. at 443-448). According to the ALJ, "Ms. Hendrick found that the claimant was limited to less than a full range of sedentary work" (R. at 23). The ALJ then set forth his reasons for giving this opinion "little" weight (R. at 23). However, the ALJ's RFC findings state that plaintiff has the residual functional capacity to "perform less than a full range of sedentary work" (R. at 19), including lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking 2 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday (R. at 19). LPT Hendrick limited plaintiff to lifting/carrying from 5-10 pounds occasionally and from 3-5 pounds frequently (R. at 444).[2] LPT Hendrick found that plaintiff could sit constantly (from 67-100% of the time) and could stand/walk occasionally (33% of the time) (R. at 443). Thus, the ALJ's finding that plaintiff can perform less than a full range of sedentary work is the same as LPT Hendrick's finding that plaintiff can perform less than a

---

[2] LPT Hendrick found that plaintiff could generally lift/carry 10 pounds occasionally and 5 pounds frequently, except in the area of lifting from floor to waist, where LPT Hendrick opined that plaintiff could lift 5 pounds occasionally and 3 pounds frequently (R. at 444).

full range of sedentary work; furthermore, the ALJ's findings regarding plaintiff's ability to sit, stand/walk, and limits on lifting and carrying are similar to the findings of LPT Hendrick.

By contrast, the only other physical RFC assessment in the record is a state agency assessment performed by Dr. Siemsen, a non-examining physician, who opined that plaintiff was limited to the exertional ability to perform light work (R. at 393-400). The ALJ noted that his RFC findings were more limiting based upon evidence not available to Dr. Siemsen (R. at 22-23).[3]

The ALJ stated that the opinions from LPT Hendrick are not supported by other evidence of record, and are not consistent with the treatment notes. However, the ALJ only took issue with one of the findings in LPT Hendrick's report, which is the finding regarding reaching above the shoulder(R. at 23). LPT Hendrick opined that plaintiff could only reach above the shoulder infrequently, or from 1-6% of the time (R. at 443). LPT Hendrick stated the following regarding the reaching test:

> Ms. Aldrich was asked to perform a repetitive forward reaching test while handling and fine motor handling objects such as weights, knobs, switches and screws.

---

[3] Plaintiff also takes issue with the fact that the ALJ failed to include any postural limitations in his RFC findings even though both Dr. Siemsen and LPT Hendrick limited plaintiff to only an occasional ability to perform various postural maneuvers (R .at 395, 443). First, SSR 96-9p states that postural limitations do not usually erode the occupational base for a full range of sedentary work because those activities are not usually required in sedentary work. 1996 WL 374185 at *7. Second, none of the six postural activities are required for any of the four jobs identified by the ALJ as jobs that plaintiff could perform. See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (U.S. Dept. of Labor, 1993).

8

> She demonstrated that she could tolerate
> forward reaching within arms reach on a
> frequent basis and no further. **She was
> asked to perform the same test while
> reaching overhead. Reaching overhead did
> significantly increase her pain levels
> overall with Ms. Aldrich demonstrating that
> she can only tolerate this activity on an
> infrequent basis. She did score in the
> Below Competitive range and reported an
> increase in her discomfort level overall.**

(R. at 446-447, emphasis added).

In discounting this opinion, the ALJ relied on treatment records from Dr. Eyster, whose notes from March 12, 2009 state the following:

> The patient's exam reveals tenderness in the
> back region, thoracic and lumbar spine
> without referral into the arms or legs…She
> does not have loss of motion of the upper or
> lower extremities.

(R. at 429). However, Dr. Eyster does not indicate if he examined plaintiff in regards to reaching overhead, or whether reaching overhead significantly increased plaintiff's pain levels. The court would note that LPT Hendrick, before examining plaintiff's ability to reach overhead, had previously stated in her report that plaintiff had "good" to "normal" strength and functional range of motion in her shoulders and arms (R. at 444, Doc. 16 at 16). Only LPT Hendrick specifically addressed plaintiff's ability to reach overhead and whether it significantly increased her pain levels.

9

The ALJ fails to identify any medical or other evidence which disputes LPT Hendrick's specific finding limiting plaintiff's overhead reaching because of significantly increased pain levels. Dr. Eyster's medical notes are neither consistent or inconsistent with the functional capacity evaluation by LPT Hendrick because it is silent on the issue of overhead reaching. Thus, the court finds that substantial evidence does not support the one specific finding in the evaluation by LPT Hendrick which the ALJ takes issue with in his decision.

The court finds that substantial evidence does not support the ALJ's finding that the opinions of LPT Hendrick lack support from treatment notes or objective findings, especially in light of the fact that both LPT Hendrick and the ALJ limited plaintiff to less than a full range of sedentary work. It makes little sense to give "little" weight to an opinion when both the opinion in question and the ALJ's RFC findings limit plaintiff to less than a full range of sedentary work. The opinion of LPT Hendrick and the ALJ both adopt similar limitations in plaintiff's ability to lift/carry, sit and stand/walk, and no other medical opinion adopted the same limitations in these three categories. In only one category, overhead reaching, did the ALJ specifically disagree with the opinion of LPT Hendrick, and, as noted above, the ALJ's reasons were not supported by substantial evidence. Therefore, on remand, the ALJ will need

to reexamine the weight to be accorded to the opinions expressed by LPT Hendrick, and make new RFC findings after determining what weight should be accorded to her opinions.

The record also contains a mental status examination from Dr. Molly Allen, a licensed psychologist (R. at 385-387). In her report, Dr. Allen stated the following:

> She is able to understand and carry out most instructions, but may need a few more cues and reminders than is typical for others, due to occasional problems with focus and worry.

(R. at 387). Although the ALJ noted the report, and the above opinion (R. at 20-21), the ALJ did not indicate what weight, if any, he accorded to her opinions, and the ALJ, without explanation, did not include the above opinion in his RFC findings.

According to SSR 96-8p, the RFC assessment must always consider and address medical source opinions, and if the RFC assessment conflicts with an opinion from a medical source, the ALJ "must" explain why the opinion was not adopted. 1996 WL 374184 at *7. The medical opinion that she may need a few more cues and reminders than is typical for others, due to occasional problems with focus and worry, is not included in the ALJ's RFC findings, and the ALJ provides no explanation for not including this limitation. The court will not speculate on why the ALJ did not include this limitation, and the court will not

speculate on the impact, if any, of this limitation on plaintiff's ability to work. Therefore, on remand, the ALJ will need to either include this limitation in his RFC findings, or provide a legally sufficient explanation for not including this limitation in plaintiff's RFC.[4]

## IV. Other issues raised by plaintiff

Plaintiff also asserts error by the ALJ in his consideration of plaintiff's obesity, obtaining records, and step five findings. The court will not address the remaining issues in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ further evaluates the medical opinion evidence, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

Regarding obesity, plaintiff notes that plaintiff was diagnosed with obesity (Doc. 11 at 14). The evaluation of obesity is governed by SSR 02-01p, 2002 WL 32255132, and on remand, the ALJ should consider this diagnosis in accordance with SSR 02-01p. However, plaintiff points to no evidence in the record showing that plaintiff's obesity exacerbated her

---

[4] Defendant argues in her brief that Dr. Allen's statement was a mere suggestion that Plaintiff may need reminders, not a permanent restriction, and that limiting her to simple, unskilled work took care of this limitation (Doc. 16 at 16-17). However, neither argument was advanced by the ALJ for not including this limitation in the RFC findings. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

other impairments.  Without some evidence that her obesity was relevant to her other impairments during the relevant time frame, the ALJ is not required to consider plaintiff's obesity. Callicoatt v. Astrue, 296 Fed. Appx. 700, 702 (10th Cir. Oct. 20, 2008).

During the hearing, plaintiff's attorney noted that the record was missing certain treatment records (R. at 45-46).  42 U.S.C. § 423(d)(5)(B) states as follows:

> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, **and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination**, prior to evaluating medical evidence obtained from any other source on a consultative basis.

(emphasis added).  Although the claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues.  This duty is especially strong in the case of an unrepresented claimant.  The ALJ has a duty to develop the

record by obtaining pertinent, available medical records which come to his attention during the course of the hearing. Carter v. Chater, 73 F.3d 1019, 1021, 1022 (10th Cir. 1996).

In the case of Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006), the court set forth the applicable law regarding the ALJ's duty to develop the record regarding medical evidence:

> "It is beyond dispute that the burden to prove disability in a social security case is on the claimant." Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir.1997); 20 C.F.R. § 404.1512(a) ( "[Y]ou must bring to our attention everything that shows that you are … disabled."). Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is "responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.' " Hawkins, 113 F.3d at 1164 (quoting Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir.1993)); 20 C.F.R. § 404.944 (requiring the ALJ to "look[ ] fully into the issues"). Generally, this means that the "ALJ has the duty to...obtain[ ] pertinent, available medical records which come to his attention during the course of the hearing." Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir.1996). Moreover, the ALJ's "duty is heightened" when a claimant, like Mr. Madrid, appears before the ALJ without counsel. Henrie, 13 F.3d at 361; Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.1992) (same); see also Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir.1987) ("The [ALJ's] duty of inquiry takes on special urgency when the claimant has little education and is unrepresented by counsel.").

In light of the fact that this case is being remanded for other reasons, the ALJ would be well advised, based on the above regulation and case law, to obtain those treatment records.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 4th day of September, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge